IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MARIA GUTIERREZ,**

       Plaintiff,

vs.                                               Civ. No. 97-1182 JC/DJS

**KENNETH S. APFEL,
Commissioner of Social Security,**[1]

       Defendant.


**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[2]

    1.  Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits.  Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing.  The Court will review the Commissioner's

---

[1] Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted therefore, for Acting Commissioner John J. Callahan as the Defendant in this suit.

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.   Plaintiff applied for social security income benefits (SSI) on October 19, 1994. Tr. 72. The application was denied initially and on reconsideration. Tr. 85 and 92. An administrative law judge (ALJ), before whom the Plaintiff and her representative appeared, considered the case *de novo* on July 2, 1996. Tr. 51-70. On August 30, 1996, the ALJ found that Plaintiff was not eligible for benefits. Tr. 35-41. The Appeals Council denied Plaintiff's request for review. Tr. 3-4. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.   Plaintiff alleges a disability due to a heart condition requiring heart valve replacement. Tr. 72. Plaintiff was born on July 4, 1950. She has a sixth grade education from Mexico, and speaks only Spanish. Plaintiff has past work experience as a home health care provider. Tr. 55-56, 72.

**Issues**

4.   Plaintiff alleges the ALJ made two errors in denying Plaintiff's applications for disability benefits. Specifically

Plaintiff alleges that (1) the ALJ's rejection of Plaintiff's treating physician's opinion constitutes an impermissible medical judgment; and 2) the ALJ failed to consider evidence submitted after the hearing in a letter dated August 1, 1996.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering her age,

3

education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

    7.  To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

    8.  Upon reaching the fifth step of the sequential evaluation

process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

  9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert

testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.  The medical evidence is undisputed and there is no conflict in the evidence. Plaintiff had rheumatic fever as a child. Tr. 137. In April of 1994, Plaintiff had a mitral valve commissurotomy.[3] Tr. 124. Subsequent to his heart surgery she developed moderate mitral regurgitation. Further, after her surgery, she has "chronic four block dyspnea on exertion." Id. Plaintiff's condition worsened in that her mitral valve regurgitation increased. 137-138. She also has a "moderately enlarged left atrium." Id. She takes captopril and Lasix for her heart condition. Tr. 125. Her most recent echocardiogram also showed trivial aortic insufficiency and moderate tricuspid regurgitation with pulmonary artery pressure estimated 50mm." Tr. 127.

11.  The issue is what effect does Plaintiff's heart condition

---

[3]Commissurotomy is the surgical incision or digital disruption of the component parts of a commissure to increase the size of the orifice; commonly utilized to separate the adherent, thickened leaflets of a stenotic mitral valve. Dorland's Illustrated Medical Dictionary at 359.

have on her ability to work.  Plaintiff's treating physician who is a cardiologist wrote a letter to Plaintiff's counsel that in his opinion Plaintiff met the listing 4.07.  20 C.F.R.§404, Subpt. P, App. 1, §4.07.  The ALJ discounted this opinion saying it was based only on a echocardiogram that demonstrated moderate mitral valve regurgitation.  Tr. 39.  There is no basis for that statement.  The opinion is from Plaintiff' treating physician who had access to all her cardiology records.   Further, there is evidence in the record that Plaintiff does meet the listing.  There is, contrary to the ALJ's statement, evidence of chronic heart failure, ventricular dysfunction and arrhythmias.   A radiologist report from March of 1995 shows "compensated congestive heart failure."  Tr. 116.  An EKG was taken on May 27, 1994 and it showed "frequent premature ventricular complexes."  Tr. 136.  In May of 1994 Plaintiff had an irregular heart rhythm.   Tr. 137.  The ALJ's reasoning for discounting Plaintiff's treating physician opinion fails upon review.

12.  There is one other opinion on this issue in the record. Dr.Kochukoshy, a consultative physician, in completing the statement of ability to do work-related activities stated that Plaintiff's condition affected only her lifting and carrying ability.  He said her standing/walking abilities were not impaired. Tr. 242-243.  He further states that what affect by an impairment to lift and carry "is difficult to answer because the absence of any exercise test...".  Tr. 242.  This opinion is not supported by

7

the substantial evidence.  The ALJ's reliance on this opinion was misplaced.  Tr. 39-40.  The opinion is conclusory and without basis in the medical records.  Henderson v. Sullivan, 930 F.2d 19, 20 (8th Cir. 1991) ("the report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' the record as a whole, especially when contradicted by the claimant treating physician.").

13.  According to Plaintiff's treating physician and cardiac specialist, Plaintiff has "chronic four block dyspnea on exertion."  Tr. 124.  Plaintiff was admitted to the hospital in May of 1994 with an admitting diagnosis of dyspnea.  Tr. 137.  She was found to have an increase in the mitral valve regurgitation and an irregular heart rhythm.  Id.  A radiologist's report showed "compensated failure pattern."  Tr. 149.  In October of 1994 Plaintiff's physician diagnosed Plaintiff with "intermittent arrhythmias, probably (sic) atrial fibrillation, or supraventricular tachycardia."  At this time she had "shortness of breath which occur (sic) with activity..."  Tr. 128.  A radiologist report from March of 1995 shows "compensated congestive heart failure.  Further, her heart is large.  Tr. 116.

14.  The ALJ found that Plaintiff's testimony was credible and specifically found that her "testimony of limitations was supported by specific clinical findings of record."  Tr. 39.  Plaintiff testified that she could only stand one hour or two.  Tr. 65.  She also testified that she was able to walk a maximum of five blocks.

Id. It appears the ALJ found the Plaintiff credible but discredited what she had to say.

15.  The ALJ states in his opinion that Plaintiff is currently working in a position that requires medium to heavy exertion. This is probably true. Plaintiff is working part time as a home health care provider. She baths and dresses elderly patients. It is important to note that Plaintiff cannot not be penalized for working at the same time she is claiming she is disabled. See Nelson v. Bowen, 882 F.2d 45, 49 (2nd Cir. 1989); Wilson v. Sullivan, 917 F.2d 272, 277 (6th Cir. 1990).

16.  The Court does not need to address Plaintiff's second argument as the additional medical records submitted by the Plaintiff will be considered on remand.

**Recommended Disposition**

For these reasons, I recommend that Plaintiff's Motion to Remand be granted and that a remand be granted for proceedings consistent with this analysis.

_____
Don J. Svet
UNITED STATES MAGISTRATE JUDGE